```
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF NEW HAMPSHIRE
```

John J. Sweeney, Jr.

   v.                                    Civil No. 12-cv-276-SM

New Hampshire State Prison,
Michael Samson, Stephen
Sullivan, and Frank Logan


### REPORT AND RECOMMENDATION


Under the aegis of 42 U.S.C. § 1983, John Sweeney has sued the New Hampshire State Prison ("NHSP"), Corporal Michael Samson, Corrections Officer ("CO") Stephen Sullivan, and CO Frank Logan, asserting claims that: (1) the NHSP violated his rights under the Americans With Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101-12213; (2) Cpl. Samson, CO Sullivan, and CO Logan violated his rights under the Eighth Amendment to the United States Constitution by subjecting him to excessive force; and (3) CO Sullivan violated his rights under the First Amendment by retaliating against him for complaining to prison officials about Sullivan's use of excessive force.  Before me for a report and recommendation is defendants' motion for summary judgment.  Sweeney objects.  For the reasons that follow, I recommend granting defendants' motion for summary judgment.

## Summary Judgment Standard

"Summary judgment is warranted where 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" McGair v. Am. Bankers Ins. Co. of Fla., 693 F.3d 94, 99 (1st Cir. 2012) (quoting Fed. R. Civ. P. 56(a); citing Rosciti v. Ins. Co. of Penn., 659 F.3d 92, 96 (1st Cir. 2011)).  "In determining whether a genuine issue of material fact exists, [the court] construe[s] the evidence in the light most favorable to the non-moving party and make[s] all reasonable inferences in that party's favor." Markel Am. Ins. Co. v. Díaz-Santiago, 674 F.3d 29, 30 (1st Cir. 2011) citing Flowers v. Fiore, 359 F.3d 24, 29 (1st Cir. 2004)).

"The object of summary judgment is to 'pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required.'" Dávila v. Corp. de P.R. para la Diffusión Púb., 498 F.3d 9, 12 (1st Cir. 2007) (quoting Acosta v. Ames Dep't Stores, Inc., 386 F.3d 5, 7 (1st Cir. 2004)).  "[T]he court's task is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Noonan v. Staples, Inc., 556 F.3d 20, 25 (1st Cir. 2009) (citations and internal quotation marks omitted).

"The nonmovant may defeat a summary judgment motion by demonstrating, through submissions of evidentiary quality, that

a trialworthy issue persists." Sánchez-Rodríguez v. AT&T Mobility P.R., Inc., 673 F.3d 1, 9 (1st Cir. 2012) (quoting Iverson v. City of Bos., 452 F.3d 94, 98 (1st Cir. 2006)). "However, 'a conglomeration of conclusory allegations, improbable inferences, and unsupported speculation is insufficient to discharge the nonmovant's burden.'" Sánchez-Rodríguez, 673 F.3d at 9 (quoting DePoutot v. Raffaelly, 424 F.3d 112, 117 (1st Cir. 2005)). "Rather, the party seeking to avoid summary judgment must be able to point to specific, competent evidence to support his [or her] claim." Sánchez-Rodríguez, 673 F.3d at 9 (quoting Soto-Ocasio v. Fed. Ex. Corp., 150 F.3d 14, 18 (1st Cir. 1998)) (internal quotation marks omitted).

## Background

At all times relevant to the claims in this case, Sweeney was incarcerated in the NHSP. He has a variety of medical problems including mobility issues that require him to use a portable assistive device such as a cane, a walker, or a wheelchair. His physical condition also limits the kinds of chairs he can use. On October 4, 2011, and November 27, 2012, Sweeney was involved in physical altercations with one or more NHSP corrections officers.

During Sweeney's incarceration, NHSP inmates were subject to a Policy and Procedure Directive, PPD 1.16, that required them, if they wanted to complain about prison conditions, to utilize a three-step grievance process consisting of: (1) an inmate request slip ("IRS") directed to the appropriate staff member and submitted "within 30 calendar days of the date on which the event complained of occurred," Defs.' Mem. of Law, Ex. A (Pitman Aff.), Attach. 2 (doc. no. 38-4), at 2; (2) a grievance form "directed to the Warden of the facility in which the inmate is currently housed" and "received within 30 calendar days from the date of the response to the request slip," id. at 3; and (3) a grievance form directed to the Commissioner of the Department of Corrections and received "within 30 calendar days of the date of the response by the Warden," id. at 4.

As construed in my Report and Recommendation ("R&R") of December 18, 2012, document no. 12, Sweeney's complaint asserts three claims. The first is an ADA claim based upon allegations that prison officials denied Sweeney: (1) necessary portable assistive devices, including a chair; (2) access to housing that would accommodate his disabilities; and (3) a substantial number of meals. Sweeney's claim that the NHSP denied him meals falls under the ADA because it is based upon allegations that: (1) he was unable to carry a food tray while walking with an assistive device; and (2) the corrections officers serving his meals gave

4

him no other way to take food back to his cell from the place where they served inmates with cell-feed privileges.

Sweeney's second claim is that: (1) CO Sullivan used excessive force against him on October 4, 2011, during an incident in which he alleges that Sullivan made it physically difficult for him to collect cartons of milk that were a part of his meal ("the 2011 milk incident");[1] and (2) CO Sullivan, CO Logan, and Cpl. Samson used excessive force against him on November 27, 2012, during an incident in which they confiscated his television set because it was missing several buttons, which exposed some of its inner workings ("the 2012 television incident").[2]

Sweeney's third claim is that after he reported CO Sullivan's participation in the 2011 milk incident to prison officials, Sullivan retaliated against him by: (1) threatening and assaulting him; (2) filing false disciplinary reports against him; and (3) placing him in housing units that did not accommodate his disability.

---

[1] In my R&R, I gave the wrong date for the milk incident; it took place in 2011 rather than 2012.

[2] The R&R also refers to allegations of an assault by CO Sullivan on November 7, 2012. It is now clear that Sweeney made no such allegation.

**Discussion**

Defendants move for summary judgment, arguing that Sweeney has not exhausted the administrative remedies available to him for complaining about any of the matters for which he seeks relief in this suit. They are correct.

According to the Prison Litigation Reform Act of 1995 ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Claims for which administrative remedies have not been exhausted are subject to dismissal. See Medina-Claudio v. Rodríguez-Mateo, 292 F.3d 31, 36 (1st Cir. 2002).

"[T]he PLRA exhaustion requirement requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006). Proper exhaustion "demands compliance with [a penal institution]'s deadlines and other critical procedural rules." Id. at 90. To meet the requirement of proper exhaustion, "a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." Acosta v. U.S. Marshals Serv., 445 F.3d 509, 512 (1st Cir. 2006) (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir. 2002)). Finally, "failure to exhaust is an affirmative defense under the PLRA."

6

Jones v. Bock, 549 U.S. 199, 216 (2007). As such, it "must be raised and proved by the defense." Cruz Berríos v. González-Rosario, 630 F.3d 7, 11 (1st Cir. 2010) (citing Jones, 549 U.S. at 216).

A. Sweeney's Argument on Exhaustion

In his objection to defendants' motion for summary judgment, Sweeney addresses the exhaustion issue in the following way:

> I complied with every procedure available to a prisoner. Your honor, a prisoner cannot hand his [IRS] or Grievance [Form] to the place & person who acts on it. A prisoner puts his paper(s) in an in-house box and any officer on duty reads it, and sends it on its way. If the officer does not like you or [you're] a convicted sex offender, your paper goes in the trash. The prisoner is left waiting for days, weeks and months for an answer to his problem, which will never come. And, in the long run is told to re-submit. How? I asked, is an inmate supposed to ever get in a court of law for redress?
>
> . . . .
>
> It's quite evident that this state worker – affidavit of Tanya Pittman [sic] knows nothing of Inmate Request Slips (IRS) or a Grievance Form, as well as the affidavit of Nancy Wolcott. . . .
>
> This Honorable Court can now see why a prisoner <u>fails</u> to meet any imposed deadlines or does never receive a reply, [be]cause the workers get paid to not know how to do their job and in return, the inmate must re-submit or get a write-up.

Pl.'s Obj. to Summ. J. (doc. no. 39) 5-6, 8-9.

7

While a prisoner may defeat a motion for summary judgment based upon a purported failure to exhaust by producing sufficient evidence to create a triable issue of fact regarding exhaustion, see, e.g., Ojo v. Medic, No. 11-cv-210-JL, 2012 WL 7150497, at *3-9 (D.N.H. Dec. 17, 2012), Sweeney's exhaustion argument falls short of the mark. Rather than producing evidence, he has merely put forward the kind of conclusory allegations that are insufficient to counter a properly supported summary-judgment motion, see Sánchez-Rodríguez, 673 F.3d at 9. Moreover, his conclusory allegations are belied by the evidence defendants have produced which includes more than a half dozen of Sweeney's IRSs and grievance forms that received responses from various prison officials despite the fact that several of them were submitted in ways that did not comply with the requirements stated in PPD 1.16. Having described the inadequacy of Sweeney's attempt to counter defendants' lack-of-exhaustion defense, I turn to each of Sweeney's three claims to determine whether defendants are entitled to judgment as a matter of law on the undisputed evidence they have produced.

B. ADA Claims

Sweeney's ADA claim is based upon the NHSP's alleged denial of portable assistive devices, appropriate housing, and meals. In his objection to summary judgment, Sweeney indicates that he

8

is not claiming that the NHSP failed to provide him with a wheelchair.  See doc. no. 39, at 9 ("I know of no claim to this court that I lacked a wheelchair.").  Thus, the assistive-devices portion of Sweeney's ADA claim is limited to an assertion that the NHSP denied him devices other than a wheelchair.

### 1. Portable Assistive Devices

Defendants argue, correctly, that Sweeney has not properly exhausted the administrative remedies available to him for resolving the NHSP's alleged failure to provide him with portable assistive devices.  On October 26, 2011, Sweeney directed a grievance form to the Warden in which he stated: (1) "I told [Sgt. Duprey] I had to have support for my fused spine.  I said then give me a chair for my back, [and he said] you go get a med pass.  I said there's 48 men and they don't have a pass for their chairs, why me only!," Defs.' Mem. of Law, Ex. C (Mansur Aff.), Attach. 1 (doc. no. 38-9), at 2-3; and (2) "I need a chair for my spine.  I'm confined to my bed.," id. at 4.  Warden Gerry responded to Sweeney's request for a chair: "Ms. Campbell [a physical therapist at the NHSP] does not support you having a chair on the pod.  There are tables with seats available on A Pod."  Id. at 1.  The October 26 grievance form was neither preceded by an IRS directed to an appropriate staff

9

member nor followed by a timely grievance to the Commissioner. Thus, Sweeney did not satisfy the prerequisite for filing a grievance with the Warden that is mandated by PPD 1.16 nor did he follow the grievance procedure to the endpoint prescribed by PPD 1.16.

On July 29, 2012, Sweeney directed an IRS to the Commissioner in which he focused primarily on complaints about the medical care he was receiving. At the end of that communication he stated:

> [A]t 1048 this AM I fell because I have a torn apart walker that inmate REDACTED busted. It has no brakes. Trying to get up from [a] little toilet w/no rail on r/s the walker flew across the bathroom. No one came to help. My roommat[e] after 12 min. picked me up. My feces [were] all over the floor. South [a housing unit] has (2) high toilets & a proper shower. I used my walker for bracing, but, it has been broke[n] since 19 Apr. – unsafe for use.

Defs.' Mem. of Law, Ex. B (Wolcott Aff.), Attach. 1 (doc. no. 38-7), at 6. Sweeney's communication with the Commissioner was preceded by neither an IRS directed to an appropriate staff member nor a grievance form directed to the Warden. Thus, Sweeney did not satisfy either of the two prerequisites for filing a grievance with the Commissioner that are mandated by PPD 1.16. In his response to Sweeney's July 29 communication, the Commissioner reminded him of the proper procedure for filing grievances. See id.

On August 1, 2012, Sweeney directed an IRS to Lt. Fiorillo in which he requested an upright chair and mentioned that his walker had wheels but no brakes. See Defs.' Mem. of Law, Ex. A (Pitman Aff.), Attach. 1 (doc. no. 38-3). Lt. Fiorillo approved Sweeney's request for a chair. In his objection to defendants' motion for summary judgment, Sweeney states that the August 1 "IRS was taken care of 'in-house' and needed no further action." Doc. no. 39, at 11.

Based upon the foregoing, defendants have produced undisputed evidence that: (1) one of Sweeney's complaints regarding assistive devices was successfully resolved at the first step of the grievance process; and (2) as to the other two, Sweeney did not properly exhaust the administrative remedies available to him.

### 2. Housing

In the grievance form Sweeney directed to the Warden on October 26, 2011, he had this to say about the accommodations for his disability provided in his housing unit:

> I have not had a shower since I fell on 11 Oct. 11. I "do-do" in my diapers because of no bars for me to get so low to the toilet. I change and wash in the toilet area because there's no room for the walker Mz. Campbell forces me to use.

Defs.' Mem. of Law, Ex. C (Mansur Aff.), Attach. 1 (doc. no. 38-9), at 3-4. The Warden responded: "Bernice Campbell advises

11

that a shower chair is available for you." Id. at 1.  I have already explained the procedural deficiencies in Sweeney's attempt to grieve the issues he addressed in his October 26 grievance form.

The IRS that Sweeney directed to the Commissioner on July 29, 2012, also mentioned accessibility problems in his housing unit:

> On 26 July 12, I again was forced to return to H-Bldg for the [Sexual Offender Program].  C Pod, as I have said before, there [is] not a proper shower (in-out) nor a high toilet, or a r/side wall w/handle bars – to get up & down from seat, and no bars for disabled at urinal.  Absolutely imperative for us wheelchair people.

Defs.' Mem. of Law, Ex. B (Wolcott Aff.), Attach. 1 (doc. no. 38-7), at 4.  The Commissioner responded: "We will examine the H-Bldg. bathrooms for ADA compliance and see that you are scheduled to meet with Dr. Englander."  Id. at 6.

I have already explained the procedural deficiencies in Sweeney's attempt to grieve the issues he addressed in the IRS he directed to the Commissioner.  Notwithstanding those deficiencies, the Commissioner responded to Sweeney's communication, and provided a response that appears to have been favorable to Sweeney.  For his part, Sweeney has produced no evidence that: (1) the problems he identified in his July 29 communication persisted thereafter; or (2) he subsequently used

12

the NHSP grievance process to complain about the alleged failure of his housing to satisfy the requirements of the ADA.

While Sweeney has used bits and pieces of the grievance process to complain about the alleged shortcomings of the housing units to which he has been assigned, defendants have produced undisputed evidence that he never properly exhausted the administrative remedies available to him for complaining about those issues.

### 3. Meals

In his October 26 grievance form, Sweeney also raised the issue of the amount of food he was being provided: "Since 5 Oct. to 26 Oct., there were 66 meals served, [and] I got only 38." Defs.' Mot. Summ. J., Ex. C (Mansur Aff.), Attach 1 (doc. no. 38-9), at 2. He also said that he was unable to eat because he had no sitting capabilities. See id. at 3. I have already explained the procedural deficiencies in Sweeney's attempt to grieve the issues he addressed in his October 26 grievance form. Defendants have produced undisputed evidence that Sweeney did not properly exhaust the administrative remedies available to him for complaining about the NHSP's alleged failure to accommodate his disability with respect to meal service.

#### 4. ADA Summary

Defendants have produced undisputed evidence that Sweeney did not exhaust the administrative remedies available to him for complaining about any of the ADA issues he raises in this suit. Accordingly, defendants are entitled to judgment as a matter of law on, and dismissal of, Sweeney's ADA claim. See Medina-Claudio, 292 F.3d at 36.

### B. Excessive-Force Claims

In my Report and Recommendation, I understood Sweeney to be making excessive-force claims against: (1) CO Sullivan, arising out of the 2011 milk incident; and (2) Cpl. Samson, CO Logan, and CO Sullivan, arising out of the 2012 television incident. While Sweeney may have disavowed excessive-force claims against Cpl. Samson and CO Logan, see Pl.'s Obj. to Summ. J. (doc. no. 39) 3, 11, his pleading on this point is ambiguous, as best, see id. at 4, 5, 11-12 (describing physical force applied by Cpl. Samson and CO Logan). In the interest of giving Sweeney every possible benefit of the doubt, in the form of an expansive construction of his claims, I will continue to interpret his complaint as asserting excessive-force claims against Cpl. Samson and CO Logan.

Sweeney's pleadings also seek to add a new defendant to his excessive-force claim. In his memorandum of law Sweeney says:

14

"I wish to add Cpl. Paul as a defendant in the excessive use of force, on 17 Nov. 12." Doc. no. 39, at 6. Under the Local Rules of this district, an objection to a motion for summary judgment is not an appropriate vehicle for amending a complaint. See LR 7.1(a)(1) ("Objections to pending motions and affirmative motions for relief shall not be combined in one filing."). Sweeney's attempt to add a new defendant should be rejected on that basis alone, but it is not necessary to rely upon LR 7.1(a)(1) because, as explained below, Sweeney did not properly exhaust the administrative remedies available to him for complaining about the alleged use of excessive force by any NHSP corrections officer.

### A. The 2011 Milk Incident

In the October 26, 2011, grievance form he submitted to the Warden, Sweeney mentioned the assault that allegedly arose out of the 2011 milk incident:

> On 4 Oct. 11 . . . I was severely assaulted by CO Sullivan.
>
> . . . .
>
> The assault came because . . . Sullivan made me beg two times for my milk. This is a case of an "ADA" violation and blatent [sic] discrimination.[3]

---

[3] As Sweeney describes the 2011 milk incident in an amendment to his compliant, the ADA is implicated because, allegedly, CO Sullivan gave Sweeney his milk cartons in a way that was difficult for him to manage while using a cane.

15

Defs.' Mem. of Law, Ex. C (Mansur Aff.), Attach. 1 (doc. no. 38-9), at 1, 3. The Warden responded: "You received a disciplinary report for the events on October 4, 2011. The matter is still pending before a hearings officer." Id. at 1. I have already explained the procedural deficiencies in Sweeney's attempt to grieve the issues he addressed in his October 26 grievance form. Sweeney also mentioned the 2011 milk incident in the 2012 IRS in which he asked for a chair. See Defs.' Mem. of Law, Ex. A (Pitman Aff.), Attach. 1 (doc. no. 38-3). In addition to approving Sweeney's request, Lt. Fiorillo admonished him to "abstain from [bringing up] unsubstantiated unrelated past incidents that have no relevance to the present issue." Id.

Based upon the foregoing, defendants have produced undisputed evidence that Sweeney did not properly exhaust his administrative remedies with respect to the assault that allegedly arose from the 2011 milk incident.

### 2. The 2012 Television Incident

Defendants have produced every IRS and grievance form submitted by Sweeney that is on file at the NHSP or in the Commissioner's office. None of them says anything about the 2012 television incident. Thus, defendants have produced undisputed evidence that Sweeney has never used any part of the

16

NHSP grievance process to seek redress for the amount of force that was used against him during the 2012 television incident.

### 3. Excessive-Force Summary

Defendants have produced undisputed evidence that Sweeney did not exhaust the administrative remedies available to him for complaining about either of the two incidents that gave rise to his excessive-force claims. Accordingly, defendants are entitled to judgment as a matter of law on, and dismissal of, those claims. See Medina-Claudio, 292 F.3d at 36.

### C. Retaliation Claim

Sweeney claims that CO Sullivan retaliated against him in several different ways for reporting the assault that allegedly took place during the 2011 milk incident. As with his excessive-force claims, Sweeney appears to want to expand his retaliation claim by adding more defendants. See Sweeney Aff. (doc. no. 44-1) 8-9. Even if the court were to grant Sweeney's improperly presented motion to amend his complaint, see LR 7.1(a)(1), that would do him no good. None of Sweeney's IRSs or grievance forms on file either at the NHSP or in the Commissioner's office says anything about retaliation against Sweeney by CO Sullivan. Thus, defendants have produced undisputed evidence that Sweeney did not exhaust the administrative remedies available to him for complaining about

17

retaliation by CO Sullivan or any other NHSP corrections officer. Accordingly, defendants are entitled to judgment as a matter of law on, and dismissal of, Sweeney's retaliation claim. See Medina-Claudio, 292 F.3d at 36.

### D. Finality of Dismissal

Arguing that the time has passed for Sweeney to grieve the issues underlying the claims in this case, defendants ask the court to dismiss those claims with prejudice. The Court of Appeals for the Second Circuit has held that "dismissal with prejudice, when remedies are no longer available, is required 'in the absence of any justification for not pursuing [such] remedies.'" Giano v. Goord, 380 F.3d 670, 675 (2d Cir. 2004) (quoting Berry v. Kerik, 366 F.3d 85, 87-88 (2d Cir. 2004); citing Rodriguez v. Westchester Cnty. Jail Corr. Dep't, 372 F.3d 485, 487 (2d Cir. 2004)); see also Barbosa-Orona v. Flores-Dasta, 843 F. Supp. 2d 230, 236 (D.P.R. 2012) (dismissing with prejudice prisoner's section 1983 claim when prisoner had failed to exhaust administrative remedies).

Here, the deadline has passed for Sweeney to grieve the amount of force used against him during either the 2011 milk incident or the 2012 television incident, see Defs.' Mem. of Law, Ex. A (Pitman Aff.), Attach. 1 (doc. no. 38-4), at 2, and Sweeney has offered no justification for his failure to pursue

18

the administrative remedies available to him. Accordingly, dismissal with prejudice is warranted for Sweeney's excessive-force claims. His retaliation claim stands on a slightly different footing. Unlike CO Sullivan's alleged use of excessive force, which Sweeney has pinpointed to specific dates in 2011 and 2012, retaliation is something that could still occur at some point in the future. While a future claim of retaliation arising from acts yet to occur might well face substantial causation problems, I am not inclined to recommend dismissal of Sweeney's current retaliation claim with prejudice to bringing a similar claim in the future. Thus, dismissal of Sweeney's retaliation claim should be without prejudice to filing a properly exhausted retaliation claim. Finally, Sweeney's ADA claim arises, at least potentially, out of an ongoing condition rather than a specific event, so there is no basis for arguing that the time has passed for grieving an alleged failure by the NHSP to comply with the ADA. Therefore, dismissal of Sweeney's current ADA claim should be without prejudice to filing a properly exhausted one.

### Conclusion

For the reasons and to the extent detailed above, I recommend that Judge McAuliffe grant defendants' motion for

summary judgment, document no. 38, and direct the clerk of the court to close this case.

Any objections to this report and recommendation must be filed within fourteen days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). Failure to file objections within the specified time waives the right to appeal the district court's order. See United States v. De Jesús-Viera, 655 F.3d 52, 57 (1st Cir. 2011), cert. denied, 132 S. Ct. 1045 (2012); Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010) (only issues fairly raised by objections to magistrate judge's report are subject to review by district court; issues not preserved by such objection are precluded on appeal).

_____
Landya McCafferty
United States Magistrate Judge

October 28, 2013

cc:   John J. Sweeney, Jr., pro se
      Francis Charles Fredericks, Esq.
      Nancy J. Smith, Esq.